STUDENT ASSISTANCE AND LOANS — STATE GUARANTEE AGENCY — REGULATION AND TRANSFER OF OBLIGATIONS The laws of the State of Oklahoma do not authorize the State Guarantee Agency to regulate the acquisition of student loans by the Student Loan Marketing Association. Where a lender, participating in the Student Loan Program established pursuant to 70 O.S. 622 [70-622] and 70 O.S. 623 [70-623] (1971), transfers any such student loan to the Student Loan Marketing Association, and such loans carry the guarantee of the State Guarantee Agency, such lender is not relieved of its obligation to make a reasonable collection effort in regard to such loans, and the State Guarantee Agency is not permitted under the laws of the State of Oklahoma to relieve the lender of such obligation. The Attorney General has considered your request for an opinion wherein you ask the following questions relating to the Student Educational Assistance Fund and the Student Loan Program guaranteed by such Fund: "1. Do the laws of the State of Oklahoma permit the State Guarantee Agency to approve an Oklahoma private lender's selling its student loan paper to the Student Loan Marketing Association, an out-of-state institution? "2. In the event a lender sells its loan paper to the Student Loan Marketing Association, is that lender relieved of responsibilities relating to the collection of the loans as set out in the contract with the Guarantee Agency? "3. Is the State Guarantee Agency permitted under laws of the State of Oklahoma to relieve a lender of its contractual responsibility for the servicing and collection of loans for which the paper may have been sold to the Student Loan Marketing Association?" Concerning your first question, 70 O.S. 622 [70-622] (1971) establishes the Student Educational Assistance Fund for the purposes expressed in 70 O.S. 623 [70-623]. The pertinent portion of 70 O.S. 623 [70-623] reads as follows: "The Oklahoma State Regents for Higher Education are hereby authorized to utilize a Student Educational Assistance Fund for guaranteeing loans made by private or public lending institutions to students applying for such loan guarantees for the purpose of obtaining financial assistance for attendance at any vocational rehabilitation school, vocational education or trade school, or any institution of higher learning, . . . ". . . "(c) The Regents for Higher Education are further authorized and empowered to promulgate such rules, regulations, and procedures with respect to student eligibility, terms of loans, and other matters they may consider appropriate, as will facilitate the program authorized by this act, and as will not conflict with the terms thereof." The foregoing statutory provisions authorize the State Regents to adopt rules and regulations and procedures in order to carry out the purpose of making student loans available, and to facilitate the Student Loan Program authorized by the act. Thus, any action by the State Regents on this subject would have to carry out the purpose of this act. The student loan paper to which you refer, consists of promissory notes executed by the student as the maker in favor of the lender and such notes are negotiable by their very nature. Nothing contained in 70 O.S. 622 [70-622] or 70 O.S. 623 [70-623] (1971) in any way restricts the negotiability of the promissory notes executed by the student borrowers, or requires approval for their transfer. Thus, approval by the State Regents of the lender selling loan notes to the Student Loan Marketing Association is not authorized by 70 O.S. 622 [70-622] and 70 O.S. 623 [70-623] (1971). Further, since the purchaser of loan paper, the Student Loan Marketing Association, is a federal instrumentality established by 20 U.S.C. § 1087-2 and authorized therein to deal in student loans made under a state Student Loan Program, a State Guarantee Agency would not have authority to regulate its purchases. McCulloch v. Maryland, 4 Wheat. (U.S.) 316, 4 L.Ed.2d 579 (1819) and Mayo v. United States, 319 U.S. 441, 98 L.Ed. 1504 (1942). Concerning your second and third questions, the purpose of 70 O.S. 622 [70-622] and 70 O.S. 612 [70-612] (1971) is to have the State Regents act as a State Guarantee Agency in order that private and public lenders will make educational loans to students, and to make available to Oklahoma students the benefits, relating to low interest educational loans, set forth in 20 U.S.C. § 1071 through 1087. The federal administrative regulations implementing the federal law are set forth in 45 CFR, part 177, and provide the terms and conditions under which such state guaranteed loan programs qualify for the federal benefits set forth in the federal law and regulations. Concerning the federally subsidized interest benefit to students, 45 CFR 177.11 reads as follows: "Interest benefits as set forth in Section 177.4 are available with respect to loans insured under state and private nonprofit student loan insurance programs meeting the requirements of Section 177.12 or Section 177.13 and with respect to direct state loan programs meeting the requirements of Section 177.14." Agreements between the United States Commissioner and state guaranteed student loan programs to reduce student interest costs are provided for in 45 CFR, 177.12, the pertinent portion of which reads as follows: ". . . The Commissioner may enter into such an agreement if he determines that the loan insurance program of the guarantee program: . . . (vii) insures not less than eighty percent (80%) of the unpaid principal of loans insured under the programs; . . . (xiii) provides that the student borrower shall not be liable for any portion of the interest on the note which is payable by the Commissioner, and the lender will not collect or attempt to collect such portion of the interest . . . ." Section 177.13 of 45 CFR, referred to in Section 177.11, only has application to student loans which were advanced and insured prior to June 30, 1967, and therefore is not pertinent to consideration of the questions posed. Section 177.31 of 45 CFR deals with agreements for reinsurance and provides in part as follows: " (a) The Commissioner may enter into reinsurance agreements with guarantee agencies with which he has an agreement pursuant to Section 177.12, whereby the Commissioner undertakes to reimburse the agency in an amount equal to eighty percent (80%) of the unpaid principal amount expended by the discharge of its insurance obligations incurred under its loan insurance program, with respect to losses resulting from a default of the student borrower on the unpaid principal balance. . . ." The Student Loan Program established under 70 O.S. 622 [70-622] and 70 O.S. 623 [70-623] (1971), and guaranteed by the State Regents, operates under the foregoing federal regulations for the purpose of making available to Oklahoma students the benefits of 20 U.S.C. § 1071
through 1087. Under the reinsurance provisions, the State retains twenty percent (20%) of the risk, which of course, is funded from the State Educational Assistance Fund created by 70 O.S. 623 [70-623] (1971). In carrying out the program, the State Guarantee Agency contracts with eligible lenders in the State of Oklahoma to participate in such program. Under Item No. 9 of this participation agreement, State Educational Assistance Fund Form 401, the lender agrees to furnish evidence that it has made reasonable collection efforts in the event of a default on any loan or note covered by the agreement. In Item No. 10 of the agreement the State Regents agree that it will, so long as the lender is the holder of any such note covered by an application approved by the State Regents, hold and maintain as a general endorsement reserve represented by cash and marketable securities having a market value of not less than ten percent (10%) of the aggregate amount of the unpaid principal and interest of all outstanding loans approved by the State Regents, exclusive of such portion thereof as may have been reinsured or guaranteed by the United States of America or an agency, department or instrumentality thereof. No provision of the contract specifically deals with the rights and liabilities of the contracting parties if the lender transfers any student loans to the Student Loan Marketing Association. It clearly appears from the agreement that so long as lenders participate in the Student Loan Program, they have the obligation to make a reasonable collection effort and the State Regents have the obligation to guarantee the loans by holding and maintaining the general endorsement reserve referred to in Item 10 of the agreement. Further, mutuality of obligation would require reasonable collection effort on the part of the lender in return for the State Regents' guarantee through the means of the general endorsement reserve. Conversely, it would appear that if a lender were relieved of the obligation to make a reasonable collection effort, mutuality of obligation would also require that the State Guarantee Agency be relieved of the obligation of guarantee. In order for the Student Loan Program to function, however, the State Guarantee Agency cannot be relieved of its guarantee obligation since this would in effect be contrary to the provisions of 70 O.S. 622 [70-622] and 70 O.S. 623 [70-623] (1971) and the terms and conditions imposed by 45 CFR, part 177, relating to low interest student loans. In addition, if a lender under the Student Loan Program is relieved of the obligation to make a reasonable collection effort on any loan made during any period of time in which such lender participates in the Student Loan Program, this would jeopardize the State's twenty percent monetary interest, or risk, in those outstanding loans made by such lender, and of course, could financially impair the State Educational Assistance Fund established for the purpose of guaranteeing such student loans. This result obviously is not consistent with, nor does it in any way further the purpose of, the provisions of 70 O.S. 622 [70-622] and 70 O.S. 623 [70-623] (1971) establishing the Student Loan Program and the State Educational Assistance Fund. For these reasons, if the lender transfers any student loans under the Student Loan Program to the Student Loan Marketing Association, and the guarantee of the State Guarantee Agency still exists with regard to such loans, a lender would not be relieved of the obligation to make a reasonable collection effort and the State Guarantee Agency would not be permitted under 70 O.S. 622 [70-622] and 70 O.S. 623 [70-623] (1971) to relieve the lender of such obligation. It is, therefore, the opinion of the Attorney General that your questions be answered as follows: The laws of the State of Oklahoma do not authorize the State Guarantee Agency to regulate the acquisition of student loans by the Student Loan Marketing Association. Where a lender, participating in the Student Loan Program established pursuant to 70 O.S. 622 [70-622] and 70 O.S. 623 [70-623] (1971), transfers any such student loan to the Student Loan Marketing Association, and such loans carry the guarantee of the State Guarantee Agency, such lender is not relieved of its obligation to make a reasonable collection effort in regard to such loans, and the State Guarantee Agency is not permitted under the laws of the State of Oklahoma to relieve the lender of such obligation. (GERALD E. WEIS) (ksg)